**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MICA CHRISTIAN,** | : | **Civil No.  1:20-CV-715** |
| | : | |
| **Plaintiff** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **v.** | : | |
| | : | |
| **ANDREW SAUL**, | : | |
| **Commissioner of Social Security** | : | |
| | : | |
| **Defendant** | : | |

**MEMORANDUM OPINION**

## I.    Introduction

The ability to ambulate unassisted is often a key component to any disability determination. If a disability claimant is unable to move unassisted in the workplace, the ability of that claimant to perform gainful employment is significantly eroded. Moreover, the requirement that a claimant use a walker, wheelchair, cane, or other assistive device is an element of the listing analysis often called upon in Social Security disability determinations. Thus, when an ALJ's determination regarding whether a disability claimant requires assistance to ambulate potentially affects the outcome of a case, that determination must be supported by substantial evidence and the basis for this determination must be properly articulated by the ALJ in order to allow for meaningful review of this aspect of a disability determination.

1

We are reminded of these familiar principles in the instant case. The plaintiff, Mica Christian ("Christian"), applied for supplemental security income under Title XVI of the Social Security Act on September 24, 2018, alleging disability due to back injury and spinal cord injury; spinal stenosis; lumbago and disc displacement; sciatica; intervertebral disc displacement lumbar without myelopathy; fractured lumbar without spinal cord injury; pelvic and/or sacroiliac joint pain; colitis/diverticulitis; and post-traumatic stress disorder, anxiety, and attention deficit hyperactivity disorder. (Tr. 160-70, 180). However, the Administrative Law Judge ("ALJ") who reviewed this case concluded that Christian could perform a less than full range of sedentary work and denied his disability application.

Christian appeared and testified at this hearing while ambulating with the assistance of a walker. However, in crafting his RFC, the ALJ discounted his need for the walker to ambulate, finding that:

> "Although the claimant attended the hearing with a four wheel walker with a seat and brakes, there is no indication this was ever prescribed."

(Tr. 22).

Christian's counsel later produced evidence before the Appeals Council confirming that the plaintiff had been prescribed a walker, and in this appeal the parties argue regarding whether this late-produced evidence meets the requirements for a Sentence 6 remand based upon newly discovered evidence. While the parties

invite us to travel down this road, we need not do so because we find that the ALJ's decision misstated the evidence with respect to Christian's use of a walker. Contrary to the ALJ's statement that there was "no indication" that a walker had been prescribed for Christian, the penultimate page of the 465 page administrative record in this case contained an April 2019 notation from a treating source prescribing that Christian use a "walker with seat for ambulation." (Tr. 464).

The failure of the ALJ to identify this entry in Christian's medical records is understandable given the breadth of this administrative record. Indeed, none of the parties identified the existence of this information in the record that was before the ALJ, choosing instead to address the question of whether this walker prescription constituted newly discovered evidence when the existence of this prescription was independently verified in a submission to the Appeals Council. (Tr. 8). However, we need not view this evidence through the lens of the newly discovered evidence doctrine because it was part of the record before the ALJ, albeit a part of the record that was not recognized by any party or the ALJ. Since this medical notation reveals that the ALJ's statement that "[a]lthough the claimant attended the hearing with a with a four wheel walker with a seat and brakes, there is no indication this was ever prescribed" was inaccurate at the time that it was made, and the question of Christian's ability to ambulate without assistance was material to this disability

analysis, this case will be remanded for further consideration of this evidence. (Tr. 22).

## II.    <u>Statement of Facts and of the Case</u>

Christian applied for supplemental security income under Title XVI of the Social Security Act on September 24, 2018, alleging disability due to back injury and spinal cord injury; spinal stenosis; lumbago and disc displacement; sciatica; intervertebral disc displacement lumbar without myelopathy; fractured lumbar without spinal cord injury; pelvic and/or sacroiliac joint pain; colitis/diverticulitis; and post-traumatic stress disorder, anxiety, and attention deficit hyperactivity disorder.  (Tr. 160-70, 180). Christian initially alleged that he was disabled as of June 1, 1998,  but amended his onset date to November 23, 2013 upon the advice of his attorney, as an unfavorable decision was issued in a prior application by an administrative law judge on November 22, 2013.  (Tr. 14, 55).

Christian has a high school education in regular education classes in May of 1997 and last worked in October of 1998. (Tr. 60, 181). On the day of his administrative hearing on August 8, 2019, Christian appeared with a rolling walker and testified that it had been prescribed within the last four months by his primary doctor. (Tr. 58-59). Christian testified on the day of his hearing that he was 41 years

old, was five feet and eleven inches tall, and weighed approximately 350 pounds. (Tr. 58).

Much of Christian's testimony focused on his lack of mobility and the ways in which it limited his ability to work. Christian stated that he could walk for 20 yards with the walker and after that amount of distance he would get pain in his lower back and that he would need to rest for a half hour. (Tr. 65-66). Christian also stated that he could stand for 2 minutes before having to sit down for a half hour and that he could only sit for about a half hour at one time;  (Tr. 67-68) indicated that he could only lift approximately ten to fifteen pounds; and stated that he had problems with numbness and tingling in his hands and that when he lifted his hands he would feel pain in his back. (Tr. 70-71). Christian testified that he could climb only two stairs at a time before resting and that he spent time watching television and reading. (Tr. 73). Christian stated that his wife helped him to bathe and dress himself. (Tr. 74). Christian testified that he no longer went shopping, but that he had used an electronic cart when shopping in the past, and that all chores indoors and outdoors were done by his wife or his children. (Tr. 76-78). Christian testified that wife worked full time, that his son was autistic, and that his daughter needed speech therapy.  (Tr. 79). Christian stated that he had used a shower chair for about ten years and that he had difficulty going up the stairs to his children's rooms. (Tr. 87).

Christian also testified that had recurring diverticulitis which causes pain and that he had trouble controlling his bowels when he had flare-ups and that the flare-ups lasted for a month. (Tr. 89). Finally, Christian testified that he performed at-home exercises to maintain flexibility and that he had tried injections in his back but almost died due to a reaction. (Tr. 90-91).

The medical record in this case indicated that Christian's medical issues began early in his childhood and were exacerbated by injuries in a car accident which occurred when he was still a teenager.  Moreover, notably, that medical record included a statement by a treating source that Christian had been prescribed a walker, a fact that seems to have eluded all parties at the administrative hearing conducted in this case. Specifically, an April 4, 2019 treatment record from Physician Assistant Norina Manassay, one of Christian's primary caregivers, prescribed a rolling walker with a seat for Christian. (Tr. 464). This medical notation, which confirmed Christian's testimony at the August 8, 2019 hearing regarding his medically prescribed use of a walker was apparently not discerned by any of the participants in this administrative process at the time of the ALJ's evaluation of this case.

Following the disability hearing conducted in this case on August 8, 2019, (Tr. 52-97), by a decision dated October 7, 2019, the ALJ denied Christian's application for benefits. (Tr. 11-29). In that decision, the ALJ first concluded that

Christian had not engaged in any substantial gainful activity since his application date of September 24, 2018. (Tr. 16). At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found that Christian had the following severe impairments: obstructive sleep apnea, diverticulitis, lumbar degenerative disc disease, moderate persistent asthma, and wedge compression fracture L1.  (Tr. 17) The ALJ noted that he considered the impairment of obesity, although it was not alleged by Christian, and considered its effect on other impairments.  (Id.) The ALJ considered the following nonsevere impairments:  hypertension, urine incontinence, hyperlipedemia, renal insufficiency, and pre-diabetes.  (Id.) Additionally, the ALJ considered Christian's alleged limitations from spinal stenosis, and found that while a diagnosis was made, there was no radiological support for the diagnosis.  He considered Christian's allegations of limitations from post-traumatic stress disorder, anxiety, and attention deficit hyperactivity disorder and found that there was no diagnosis and no treatment from any mental health provider after the amended alleged onset date. (Id.)  The ALJ found that spinal stenosis, post-traumatic stress disorder, anxiety, and attention deficit hyperactivity disorder were non-medically determinable impairments. (Tr. 18).

One medical impairment the ALJ did not consider, however, was Christian's use of a prescribed walker. As to this impairment, the ALJ discounted Christian's need for the walker to ambulate, finding that:

> "Although the claimant attended the hearing with a four wheel walker with a seat and brakes, there is no indication this was ever prescribed."

(Tr. 22.) This finding was inconsistent with the April 2019 notation from Physician Assistant Manassay, a treating source, prescribing that Christian use a "walker with seat for ambulation." (Tr. 464).

At Step 3, the ALJ determined that Christian did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 18-19). The ALJ specifically considered Listings 1.02, 1.04, 3.03 and 5.06. (Tr. 19). However, as to Listings 1.02 and 1.04, there is no indication that the ALJ's assessment took into account Christian's prescribed use of a walker since the ALJ had erroneously concluded that there was no such prescription.

Between Steps 3 and 4, the ALJ fashioned a residual functional capacity (RFC), considering Christian's limitations from his impairments:

> After careful consideration of the entire record, the undersigned finds that the claimant has the [RFC] to perform sedentary work as defined in 20 C.F.R. 404.1567(a) except the claimant climb stairs and ramps occasionally, never climb ladders, ropes or scaffolds, balance occasionally, stoop occasionally, kneel occasionally, crouch

occasionally, and never crawl. The claimant can work at unprotected heights frequently, and have frequent exposure to moving mechanical parts, humidity, wetness, dust, odors, fumes, pulmonary irritants, extreme cold and vibration.  He can frequently push or pull with his lower right extremity.  Additionally, the claimant is able to perform simple, routine and repetitive tasks but not at a production pace rate.

(Tr. 19).  This RFC determination also did not include limitations for the use of an assistive device to ambulate even though in April of 2019, Physician Assistant Manassay had prescribed that Christian use a "walker with seat for ambulation." (Tr. 464).

Having arrived at this RFC assessment, the ALJ found at Step 4 that Christian had no past relevant work. (Tr. 23). The ALJ then made a finding at Step 5 that, Christian could perform work available in the general economy as a video monitor, a credit checker, and a document prep worker.  (Tr. 23-24)  Accordingly, the ALJ concluded that Christian did not meet the  standard for disability set by the Act and denied his claim. (Id.)  Christian filed a request for review on October 9, 2019.  The Appeals Council denied the request for review. (Tr. 1-8)

This appeal followed. (Doc. 1). On appeal, Christian contends, *inter alia*, that the ALJ erred in finding that there was no evidence that the rolling walker Christian used to appear at his hearing  had been prescribed by his primary physician, as he testified.  This case is fully briefed and is, therefore, ripe for resolution. While we appreciate  the  challenges  confronting  ALJs  in  evaluating  voluminous  medical

records, in this case we are constrained to observe that the ALJ's statement that there was no indication that a walker had been prescribed for Christian was incorrect based upon the record before the ALJ, which included an April 2019 notation by Physician Assistant Manassay, a treating source, prescribing that Christian use a "walker with seat for ambulation." (Tr. 464). Since the need for a walker to ambulate was material to this disability determination, and the ALJ's findings in this regard were in error, for the reasons set forth, the ALJ decision is VACATED and the case is remanded to the Commissioner for further proceedings.

## III.   <u>Discussion</u>

### A.   <u>Substantial Evidence Review – the Role of this Court</u>

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.  See 42 U.S.C. §405(g); <u>Johnson v. Comm'r of Soc. Sec.</u>, 529 F.3d 198, 200 (3d Cir. 2008); <u>Ficca v. Astrue</u>, 901 F. Supp.2d 533, 536 (M.D.Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Pierce v. Underwood</u>, 487 U.S. 552, 565 (1988).  Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla.

10

Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not

substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a

conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir.

1993). But in an adequately developed factual record, substantial evidence may be

"something less than the weight of the evidence, and the possibility of drawing two

inconsistent conclusions from the evidence does not prevent [the ALJ's decision]

from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n,

383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is

supported by substantial evidence the court must scrutinize the record as a whole."

Leslie v. Barnhart, 304 F. Supp.2d 623, 627 (M.D.Pa. 2003).

The Supreme Court has recently underscored for us the limited scope of our

review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout
> administrative law to describe how courts are to review agency
> factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——,
> 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-
> evidence standard, a court looks to an existing administrative record
> and asks whether it contains "sufficien[t] evidence" to support the
> agency's factual determinations. Consolidated Edison Co. v. NLRB,
> 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis
> deleted). And whatever the meaning of "substantial" in other contexts,
> the threshold for such evidentiary sufficiency is not high. Substantial
> evidence, this Court has said, is "more than a mere scintilla." Ibid.; see,
> e.g., Perales, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks
> omitted). It means—and means only—"such relevant evidence as a
> reasonable mind might accept as adequate to support a conclusion."

> Consolidated Edison, 305 U.S. at 229, 59 S.Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019).

The question before this Court, therefore, is not whether the claimant is disabled, but rather whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law.  See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D.Pa. Mar. 11, 2014)("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.")(alterations omitted); Burton v. Schweiker, 512 F. Supp. 913, 914 (W.D.Pa. 1981)("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990)(noting that the scope of review on legal matters is plenary); Ficca, 901 F. Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

Several fundamental legal propositions which flow from this deferential standard of review. First, when conducting this review "we are mindful that we must not substitute our own judgment for that of the fact finder." Zirnsak v. Colvin, 777 F.3d 607, 611 (3d Cir. 2014) (citing Rutherford, 399 F.3d at 552). Thus, we are enjoined to refrain from trying to re-weigh the evidence. Rather our task is to simply

determine whether substantial evidence supported the ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons for his decision." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000). As the Court of Appeals has noted on this score:

> In Burnett, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review. Id. at 120; see Jones v. Barnhart, 364 F.3d 501, 505 & n. 3 (3d Cir.2004). The ALJ, of course, need not employ particular "magic" words: "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." Jones, 364 F.3d at 505.

Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice, ours is a twofold task. We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review.

## B.    Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §1382c(a)(3)(A); see also 20 C.F.R. §416.905(a).  To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy.  42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §416.905(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process.  20 C.F.R. §416.920(a).  Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").  20 C.F.R. §416.920(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC).  RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."  Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R.

§§416.920(e), 416.945(a)(1).  In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.  20 C.F.R. §416.945(a)(2).

There is an undeniable medical aspect to an RFC determination, since that determination entails an assessment of what work the claimant can do given the physical limitations that the claimant experiences. Yet, when considering the role and necessity of medical opinion evidence in making this determination, courts have followed several different paths. Some courts emphasize the importance of medical opinion support for an RFC determination and have suggested that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." Biller v. Acting Comm'r of Soc. Sec., 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013) (quoting Gormont v. Astrue, Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa. Mar. 4, 2013)). In other instances, it has been held that: "There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006). Further, courts have held in cases where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability that "the

proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

These seemingly discordant legal propositions can be reconciled by evaluation of the factual context of these decisions. Those cases which emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting where a well-supported medical source has opined regarding limitations which would support a disability claim, but an ALJ has rejected the medical opinion which supported a disability determination based upon a lay assessment of other evidence. In this setting, these cases simply restate the commonplace idea that medical opinions are entitled to careful consideration when making a disability determination, particularly when those opinions support a finding of disability. In contrast, when an ALJ is relying upon other evidence, such as contrasting clinical or opinion evidence or testimony regarding the claimant's activities of daily living, to fashion an RFC courts have adopted a more pragmatic view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. See Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006); Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015). In either event, once the ALJ has made this determination, our review of the ALJ's assessment

16

of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002); see also Metzger v. Berryhill, No. 3:16-CV-1929, 2017 WL 1483328, at *5 (M.D. Pa. Mar. 29, 2017), report and recommendation adopted sub nom. Metzgar v. Colvin, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017); Rathbun v. Berryhill, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D. Pa. Mar. 12, 2018), report and recommendation adopted, No. 3:17-CV-301, 2018 WL 1479366 (M.D. Pa. Mar. 27, 2018).

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. Mason, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. §§404.1512(f), 416.912(f); Mason, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination.

17

Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981).  Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence.  Id. at 706-707.  In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding."  Schaudeck v. Comm'r of Soc. Sec., 181 F. 3d 429, 433 (3d Cir. 1999).

## C.   The ALJ Erred in Finding There was No Evidence that Christian's Rolling Walker was Prescribed.

It is axiomatic that when evaluating a Social Security disability claim "the ALJ may choose wh[at evidence] to credit but 'cannot reject evidence for no reason or for the wrong reason.'" Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999) quoting Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir.1993). Assessing a claimant's RFC falls within the purview of the ALJ. 20 C.F.R. § 404.1546(c); SSR 96-8p, 1996 WL 374184 (S.S.A. July 2, 1996). "[RFC] is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" Burnett, 220 F.3d at 121 (quoting Hartranft v. Apfel, 181 F.3d 358, 359 (3d Cir. 1999)). Specifically, one's RFC reflects the *most* that an individual can

18

still do, despite his or her limitations, and is used at steps four and five to evaluate the claimant's case. 20 C.F.R. §§ 404.1520, 404.1545; SSR 96-8P, 1996 WL 374184 at *2. In crafting the RFC, the ALJ must consider all the evidence of record, including medical signs and laboratory findings, daily activities, medical source statements, and a claimant's medical history. SSR 96-8p, 1996 WL 374184, at *5; see also Mullin v. Apfel, 79 F. Supp. 2d 544, 548 (E.D. Pa. 2000). An ALJ's RFC findings, however, must be supported by the medical evidence. Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986).

In this case, the ALJ specifically considered whether Christian met or equaled Listing 1.02 and 1.04.  Because the ALJ's decision was based upon consideration of Listing 1.02, the use of a walker or an assistive device requiring the use of both hands was a crucial factor to be considered in the case since Listing 1.02 identifies the inability to ambulate effectively as a significant factor when evaluating a disability claim and explains that:

b. What we mean by inability to ambulate effectively.

(1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. *Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.* (Listing 1.05C is an exception to this general definition because the

19

individual has the use of only one upper extremity due to amputation of a hand.)

(2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. *Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes*, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

It is of note that in crafting his RFC, the ALJ found:

Although the claimant attended the hearing with a with a four wheel walker with a seat and brakes, there is no indication this was ever prescribed.

(Tr. 22).

Christian argues that the ALJ erred in finding that the walker was not prescribed and argues that a prescription for the walker was submitted to the Appeals Council as part of the appeal and is contained in the record at page 8. (Doc. 18, at 7). Indeed, the prescription for the walker that was presented to the Appeals Council appears in the record at page 8 and is dated April 4, 2019. (Tr. 8). The Commissioner, in turn, has argued that the prescription for the walker that was submitted to the Appeals Council was new and material evidence and that Christian has failed to

show good cause for failing to submit it to the ALJ.  (Doc. 19, at 11-13).  The Commissioner contends that pursuant to the ruling of <u>Matthews v. Apfel</u>, 239 F.3d 589, 594 (3d Circ. 2001), Christian cannot argue that evidence which was not before the ALJ be used to challenge that the ALJ's decision was not supported by substantial evidence. (<u>Id.</u>, at 12).

While we agree with the Commissioner as to the general principle raised, we do not agree as to its application in this case.  It is true that the physical prescription note was not before the ALJ. The April 4, 2019 medical record of Physician Assistant Manassay; however, was in fact properly before the ALJ and clearly reflected the statement that on April 4, 2019 she prescribed a rolling walker with a seat for Christian. (Tr. 464). While on appeal, none of the parties specifically identified this pre-existing medical record which contradicted the ALJ's finding that no walker had been prescribed for Christian in their arguments, we are not free to ignore the fact that the ALJ erred in failing to acknowledge the medical note regarding the prescription for the walker, a fact which was doubtless material to his disability determination.

As we have noted, it is axiomatic that an ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." <u>Cotter</u>, 642 F.2d at 704. Furthermore, the ALJ must also "indicate in his decision which evidence

21

he has rejected and which he is relying on as the basis for his finding." <u>Schaudeck</u>, 181 F.3d at 433. Finally, when evaluating a Social Security disability claim "the ALJ may choose wh[at evidence] to credit but 'cannot reject evidence for no reason or for the wrong reason.'" <u>Plummer</u>, 186 F.3d at 429. In the instant case, we conclude that the ALJ's RFC determination is not supported by an adequate explanation, since the decision rests in part upon a misstatement regarding whether a walker had been prescribed for Christian.  The records of Physician Assistant Manassay regarding the prescription for a rolling walker, as well as the records of Dr. Stone and Dr. Griver, who also opined regarding Christian ability ambulate effectively, should be properly considered in light of the fact that a walker was prescribed for Christian in April of 2019.  Accordingly, we remand the case to the Commissioner for further consideration of this evidence. Because the Court has found a basis for remand on these grounds, we need not address Christian's remaining arguments. To the extent that any other error occurred, it may be remedied on remand. Yet, while we reach this result, we note that nothing in this Memorandum Opinion should be deemed as expressing a judgment on what the ultimate outcome of any reassessment of this evidence should be. Rather, the task should remain the duty and province of the ALJ on remand.

**IV.**   **Conclusion**

Accordingly, IT IS ORDERED that Christian's request for a new administrative hearing is GRANTED, the final decision of the Commissioner denying these claims is VACATED, and this case is remanded to the Commissioner to conduct a new administrative hearing pursuant to sentence four of 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

Submitted this 10th day of June, 2021.


/s/ *Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge